Argued October 16, affirmed December 4, 1978

STATE OF OREGON, *Appellant,*
*v.*
STANLEY GENTRY TERRY, *Respondent.*
(No. C 77-10-14866 & C 77-10-14867,
CA 11138 & 11139)
(Cases consolidated)
587 P2d 1033

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Alton John Bassett, Portland, argued the cause and submitted the brief for respondent.

Before Schwab, Chief Judge, and Johnson, Gillette, and Roberts, Judges.

JOHNSON, J.

**JOHNSON, J.**

Defendant was indicted for seven gambling offenses, including possession of gambling records in the second degree. ORS 167.132.[1] The police had seized from defendant's residence over a million two-and-one-half inch by six inch cards. Printed on the front of each card is the inscription:

OREGON HAPPY CANYON MERCHANDISE TOKEN
HOUSE BILL 2341      ORS 167.117 to 167.162
(1)
ORS 167.117 to 167.162      C 75-07-2197 Cr
c.1977      ONE DOLLAR MERCHANDISE TOKEN

The back of the card says:

VALID ONLY IF PROPERLY VALIDATED

_____

Person or Organization

Defendant filed a motion to return all or a portion of the cards. The trial court ordered return of the cards "less several thousand which may be retained by the state for evidentiary purposes during the pendency of the case." The state appeals.

Defendant's motion and the trial court's decision assume that the initial seizure of the cards as evidence was valid. The seizure was presumably pursuant to a search warrant under ORS 133.535, which provides in pertinent part:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

---

[1] ORS 167.132 provides:

"(1) A person commits the crime of possession of gambling records in the second degree if, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article:

"(a) Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise; or

"(b) Of a kind commonly used in the operation, promotion or playing of a lottery or numbers scheme or enterprise.

"(2) Possession of gambling records in the second degree is a Class A misdemeanor."

[ 335 ]

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"* * * * *"

The trial court's order was based on ORS 133.643 which provides:

"A motion for the return or restoration of things seized shall be based on the ground that the movant has a valid claim to rightful possession thereof, because:

"(1) The things had been stolen or otherwise converted, and the movant is the owner or rightful possessor; or

"(2) The things seized were not in fact subject to seizure under ORS 133.525 to 133.703; or

"(3) The movant, by license or otherwise, is lawfully entitled to possess things otherwise subject to seizure under ORS 133.525 to 133.703; or

"(4) *Although the things seized were subject to seizure under ORS 133.525 to 133.703, the movant is or will be entitled to their return or restoration upon the court's determination that they are no longer needed for evidentiary purposes;* or

"* * * * * ." (Emphasis added.)

The state's first argument is that ORS 133.643(4) does not apply because the property at issue here is gambling records under ORS 167.132 and thus "contraband."[2] ORS 133.643(4) by its express provisions refers to any property "subject to seizure under ORS 133.525 to 133.703," including contraband seized pursuant to ORS 133.535(2). With respect to certain types of property seized there are special statutes

---

[2] There is no statutory definition for contraband in the criminal code except as relating to specific offenses concerning correctional institutions. See ORS 162.135(1). The term as used in ORS 133.535(2) appears to refer to property which is illegal for any person to possess. *See* Webster's Third New International Dictionary 494 (1971).

dealing with the disposition thereof. See, *e.g.,* ORS 142.040 (stolen property), ORS 167.247 (illegal drugs), and ORS 167.162 (gambling devices).[3] Where these special statutes conflict with ORS 133.643(4), a general statute, we would hold that the special statutes control. There is no special statute concerning the disposition of gambling records, and thus the general provisions of ORS 133.643 control.

■ It is arguable that if the cards were on their face gambling records and thus illegal to possess, the defendant did not have "a valid claim to rightful possession thereof" under ORS 133.643. We do not reach that question here because we cannot say with any certainty that these cards on their face are "of a kind commonly used" for a lottery. ORS 167.132(1)(b). They appear to be some kind of unvalidated merchandise token. The references on the cards to "ORS 167.117 to 167.162," the gambling statutes, and the other numbers appearing thereon do not by themselves make these cards gambling records.

■ The state next argues that possession of the cards is an offense under Portland, Ore., Code § 14.68.070 (1969), which provides:

"Whenever it shall appear to the district court that such machines or devices so seized were used or kept within the city in violation of this chapter, the district court may adjudge forfeiture thereof and shall order the chief of police to destroy the same. The chief of police shall make a written statement to the court showing that he has complied with such order."

The cards are not on their face a "punch *board*," "pull-tab *board*," or "twist-tab *board*," nor can we say with any certainty that on their face they are a "similar device either devised or designed for the purpose of distributing money, merchandise or any other thing of value or designed to test the skill or

_____
[3] The state does not allege in the indictment or contend the cards are "gambling devices" under ORS 167.162. *See* ORS 167.117(5).

knowledge of a person or used or placed for amusement only, or otherwise." Portland, Or., Code § 14.68.060 (1969).

The final contention by the state is that the cards were still needed for evidence. The trial court reasoned that the introduction of all the cards was merely cumulative. The only reason offered by the state for continued retention for evidentiary purposes was in order to prove the massiveness of the alleged gambling scheme. Defendant agreed to stipulate to the number of the cards and the trial court's order was conditioned on that stipulation. On appeal the state argues:

> "* * *. We do not now question the discretionary authority of a court, at the time of trial, to impose some limit upon the quantity of evidence introduced, on the ground that additional evidence would be cumulative. We submit, however, that a trial court clearly exceeds that authority when, as the court did in this case, it orders the State, in advance of trial, to select once and for all the portion of the evidence available to it on which it will stake its chances of obtaining a conviction, and to surrender the balance of that evidence to the accused. * * *"

We agree that it would be an abuse of discretion for the trial court to force such a choice on the state at this stage of the proceeding, if the state had offered some plausible reason why it might need to retain all of the cards. In view of the defendant's stipulation the state has failed to show any plausible reason why all the cards must be retained for evidentiary purposes.

Affirmed.